IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                 No. CR 07-1479 JB

JUAN MANUEL APODACA-LEYVA,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum and Request for Downward Adjustment, filed December 18, 2007 (Doc. 21). The Court held a sentencing hearing for Juan Manuel Apodaca-Leyva on January 3, 2007. The primary issues are (i) whether the Presentence Investigation Report ("PSR") properly assigns Apodaca-Leyva a 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii); (ii) whether a Criminal History Category of III seriously over-represents Apodaca-Leyva's criminal history; and (iii) whether Apodaca-Leyva is entitled to a variance. Because the Court believes that the 16-level enhancement was properly assessed, and that a criminal history category of III does not over-represent Apodaca-Leyva's criminal history, but because the Court believes that the factors in 18 U.S.C. § 3553(a) counsel for a variance, the Court will overrule Apodaca-Leyva's objection to the 16-level enhancement, deny his request for a departure, and will grant his request for a variance. The Court will sentence Apodaca-Leyva to 10 months imprisonment.

**FACTUAL BACKGROUND**

Apodaca-Leyva is fifty-three years old and is a citizen of Mexico. See Sentencing

Memorandum and Request for Downward Adjustment at 7, filed December 18, 2007 (Doc. 21)("Sentencing Memorandum").  He is before the Court for sentencing on the offense of illegal re-entry.  See id.  He has spent a considerable amount of his life in the United States.  See id.

Apodaca-Leyva has one felony conviction that is now eighteen years old.  See PSR ¶ 20, at 6, disclosed on October 4, 2007.  On March 9, 1990, Apodaca-Leyva pled guilty to two counts of aggravated assault.  See id. ¶ 20, at 6.  Apodaca-Leyva pled guilty to the two counts under Arizona Statute § 13-1204(A)(1).  See id.; Sentencing Memorandum at 7-8.  The charge was based on a DWI accident with injuries.  See Sentencing Memorandum at 8.  The accident occurred on August 26, 1989 and the conviction date was March 9, 1990.  See id.  Apodaca-Leyva's termination date was just under seven years ago.  See id.  He accepted responsibility for his DWI accident and received a sentence of two eight-year sentences that were run consecutively.  See id.  Apodaca-Leyva served eight years in prison and then was deported.  See id.

Apodaca-Leyva was awarded 3 criminal history points for his convictions for aggravated assault.  See PSR ¶ 20, at 6.  Apodaca-Leyva was also assessed a 16-level increase pursuant to U.S.S.G. 2L1.2(b)(1)(A)(ii) because he was previously deported after a conviction for a felony that is a crime of violence.  See U.S.S.G. 2L1.2(b)(1)(A)(ii).

Apodaca-Leyva also has one misdemeanor conviction for criminal damage to property in 2004.  See Sentencing Memorandum at 8; PSR ¶ 21, at 8.  Apodaca-Leyva's two-year term of probation for his criminal damage to property began March 9, 2007.  See PSR ¶ 22, at 9.  At the time of his arrest for this federal crime, Apodaca-Leyva was still under the criminal justice sentence for the misdemeanor.  See Sentencing Memorandum at 8.  Apodaca-Leyva received one criminal history point for his misdemeanor offense and then 2 additional points under U.S.S.G. ¶ 4A1.1(d) for being under a criminal justice sentence when he committed this offense.  See PSR ¶ 22, at 9.

**PROCEDURAL BACKGROUND**

On July 18, 2007, Apodaca-Leyva pled guilty pursuant to a Non-Fast Track Plea Agreement to a one-count information charging a violation of 8 U.S.C. §§ 1326(a) and (b), that being re-entry of a removed alien. See United States' Response to Sentencing Memorandum and Request for Downward Adjustment at 1, filed December 20, 2007 (Doc. 22)("United States' Response"). After he pled guilty, a probation officer prepared a PSR. See PSR. Apodaca-Leyva's adjusted offense level was calculated to be 21, after assessing a 16-level enhancement and a 3-level reduction for his acceptance of responsibility. See PSR ¶¶ 12, 16-18, at 5-6. Apodaca-Leyva's criminal history category was calculated to be III. See id. ¶ 43, at 15. His Guideline sentence range is 46 to 57 months. See id.

On December 21, 2007, Apodaca-Leyva filed a Sentencing Memorandum arguing that a 16-level enhancement for his eighteen-year old offense is not warranted, that a criminal history category of III over-represents the seriousness of his criminal history and that his case counsels for a variance. See Sentencing Memorandum. In his Sentencing Memorandum, Apodaca-Leyva also states that this case is on point with United States v. Lopez-Lopez, No. CR 04-2209 JB, a case the Court previously decided. See Sentencing Memorandum at 9. Apodaca-Leyva notes that his case involves the same statute as was at issue in United States v. Lopez-Lopez, and contains the same concern whether the violation of the relevant statute is properly defined as a crime of violence for the purposes of U.S.S.G. 2L1.2. See Sentencing Memorandum at 9. Apodaca-Leyva asks the Court to conduct the same analysis in his case as it did in United States v. Lopez-Lopez. See Sentencing Memorandum at 9. Apodaca-Leyva asks the Court to impose a similar reduction to his sentence as was given in United States v. Lopez-Lopez, so that he will be punished consistently with other defendants who are convicted of drunk driving in other states. See Sentencing Memorandum at 10.

On December 20, 2007, the United States filed a response to Apodaca-Leyva's Sentencing Memorandum.  See United States' Response.  The United States argued that the United States Probation Office ("USPO") correctly calculated the offense level, that Apodaca-Leyva's criminal history category of III does not over-represent his criminal history, and that a variance is warranted because an imposition of a sentence within the advisory Guideline range would result in unwarranted sentencing disparities.  See id. at 3-6.  The United States noted that, when a defendant is convicted on illegal re-entry and the most serious prior offense he has committed is DWI, the base-offense level is enhanced by 4 levels. See id. at 5; U.S.S.G. § 2L1.2(b)(1)(D).  After accounting for such a defendant's acceptance of responsibility, the adjusted offense level is 10.  See id.  The United States points out that Apodaca-Leyva's most serious prior offense was, essentially, DWI, although Arizona labels the offense "Aggravated Assault."  Id.  The United States argues that a variance is warranted because, had Arizona labeled Apodaca-Leyva's crime as DWI, his advisory Guideline range, with an adjusted offense level of ten and a criminal history category of III, would have been 10 to 16 months rather than 46 to 57 months imprisonment.  See id. at 5-6.  Thus, the United States argues that a proper sentence for Apodaca-Leyva would be within the advisory Guideline range of 10 to 16 months.  See id. at 6.

On January 3, 2008, the USPO wrote an Addendum to the PSR.  See PSR, Addendum to the Presentence Report at 1 ("Addendum").  The Addendum responded to Apodaca-Leyva's Sentencing Memorandum by stating that a downward departure is not warranted in this case.  See Addendum at 1.  Specifically, the USPO noted that Apodaca-Leyva's convictions consist of two counts of aggravated assault and criminal damage to property.  See id.  The USPO also stated that Apodaca-Leyva was charged with Driving While Under the Influence in 2004, and Aggravated Assault with a Deadly Weapon in February 2007.  See id.  These cases remain pending with active warrants.  See

id. The USPO noted that, based upon Apodaca-Leyva's prior convictions and pending charges, that a downward departure does not appear to be warranted. See id.

## U.S.S.G. § 2L1.2 AND CRIMES OF VIOLENCE

U.S.S.G. § 2L1.2 assess a 16-level enhancement on any defendant who re-enters and was previously deported after committing a crime of violence. U.S.S.G. § 2L1.2 states in relevant part:

(b) Specific Offense Characteristic

(1) Apply the Greatest:

If the defendant previously was deported, or unlawfully remained in the United States, after--

(A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels;

U.S.S.G. § 2L1.2. Section 2L1.2 of the Guidelines states that a "'Crime of violence' means any of the following: . . . aggravated assault . . . or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii)(2003)(emphasis added). When determining if a prior conviction qualifies as a sentencing enhancement under the Sentencing Guidelines, "a court must only look to the statutory definition, not the underlying circumstances of the crime." United States v. Venegas-Ornelas, 348 F.3d 1273, 1275 (10th Cir. 2003)(quoting United States v. Reyes-Castro, 13 F.3d 377, 379 (10th Cir. 1993)) cert. denied, 543 U.S. 986 (2004).

According to Application Note 1 to U.S.S.G. § 2K1.2, there are two requirements for an offense to qualify as a crime of violence: (i) the offense must be "murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson,

extortion, extortionate extension of credit, burglary of a dwelling"; or (ii) the offense must be "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2K1.2, app. n.1.  As the text of Note 1 reveals, the requirements of a crime of violence are disjunctive.  See id.  Note 1 uses the word "or" to separate the two requirements, indicating that a crime of violence can be satisfied by an offense that meets either requirement.  Id.  Indeed, a recent amendment to the commentary to the Sentencing Guidelines placed "or" within the crime of violence definition, in place of the word "and," to make it clear that the requirements were disjunctive. See United States v. Munguia-Sanchez, 365 F.3d 877, 882 (10th Cir. 2004). As the Sentencing Commission explained:"The previous definition often led to confusion over whether the specified offenses listed in that definition [of crime of violence], particularly sexual abuse of a minor and residential burglary, also had to include as an element of the offense 'the use, attempted use, or threatened use of physical force against the person of another.'" Id. (quoting U.S.S.G. app. C (vol. II), amend. 658, at 401-402 (Supp. 2003)). To remedy this misunderstanding, "[t]he amended definition makes clear that the enumerated offenses are always classified as 'crimes of violence,' regardless of whether the prior offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another." See United States v. Munguia-Sanchez, 365 F.3d at 882 (quoting U.S.S.G. app. C (vol. II), amend. 658, at 401-02 (Supp. 2003))(emphasis added).  Furthermore, the Tenth Circuit has ruled that the two requirements are disjunctive:

> [T]he "crime of violence" definition lists several offenses that do not require the proof of the use or threatened or attempted use of force. . . . The fact that those offenses are "crimes of violence" indicates that the definition is disjunctive; the contrary reading -- that an offense must satisfy both subparts – would mean, nonsensically, that those offenses could not be crimes of violence, even though they are specifically listed as such.

United States v. Munguia-Sanchez, 365 F.3d 877, 880-82 (10th Cir. 2004).

## **ARIZONA STATUTES §§ 13-1203, 13-1204**

A person commits assault by: "[i] Intentionally, knowingly or recklessly causing any physical injury to another person; or [ii] Intentionally placing another person in reasonable apprehension of imminent physical injury; or [iii] Knowingly touching another person with the intent to injure, insult or provoke such person." Ariz. Rev. Stat. § 13-1203(A). Arizona statute § 13-1204 states in relevant part:

> A person commits aggravated assault if the person commits assault as prescribed by § 13-1203 under any of the following circumstances:
>
> 1. If the person causes serious physical injury to another.
>
> 2. If the person uses a deadly weapon or dangerous instrument.
>
> 3. If the person commits the assault by any means of force that causes temporary but substantial disfigurement, temporary but substantial loss or impairment of any body organ or part or a fracture of any body part.

Ariz. Rev. Stat. § 13-1204(A).

In United States v. Lopez-Lopez, No. CR 04-2299, the defendant objected to the 16-level enhancement assessed by the PSR based on his prior conviction under Arizona Revised Statute § 13-1204. See Memorandum and Opinion at 10, filed October 11, 2005 (Doc. 41)("Memorandum Opinion and Order"). The Defendant, Lopez-Lopez, argued that Arizona's aggravated assault statute fell short of being a crime of violence, because it did not have as an element the use or threatened use of physical force. See id. at 11. The Court noted that Arizona defines aggravated assault as an assault committed in one of thirteen ways, including an assault that "causes serious physical injury to another." Ariz. Rev. Stat. § 13-1204(A)(1).

The Court in United States v. Lopez-Lopez also noted that the underlying offense, assault,

is defined as "[i]ntentionally, knowingly or recklessly causing any physical injury to another person." Ariz. Rev. Stat. § 13-1203. The Court acknowledged that, as the statute indicates, using or threatening to use physical force is not required to complete the crime of aggravated assault in Arizona. See Memorandum Opinion and Order at 11.  The Court stated: "Assuming that Arizona's aggravated assault statute does not have as an element the use or threatened use of physical force, the primary issue is whether the Guidelines require that the statutory definition of the offense include the use or threatened use of physical violence for the offense to be a crime of violence." Id.

The Court in United States v. Lopez-Lopez held that, because the crime of violence statute requirements are disjunctive, a crime of violence "could be either one of the enumerated offenses or any offense that has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. (emphasis added). The Court held that Lopez-Lopez' conviction under Arizona's aggravated assault statute was a crime of violence pursuant to U.S.S.G. §2L1.2(b)(1)(A)(ii), because his crime was one of the enumerated crimes listed in the first part of Note 1. See Memorandum Opinion and Order at 13-14. The Court reasoned that, "[b]ecause the enumerated offenses are always classified as crimes of violence, Arizona's crime of aggravated assault is a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii)." Id.  Although Lopez-Lopez urged the Court to look beyond the name that the Arizona Legislature has given the crime to its substance, the Court declined to "peek behind the curtain of Arizona's aggravated assault statute for purposes of the Guidelines." Memorandum Opinion and Order at 14.  The Court overruled Lopez-Lopez' objection to the 16-level enhancement.  See id.

## RELEVANT LAW REGARDING SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States severed the mandatory provisions from the Federal Sentencing Act, thus making the Guidelines

effectively advisory.  In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal statute  . . .  shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that

the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006). This presumption, however, is an appellate presumption, not one that the trial court can or should apply. See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory guideline sentence. See Rita v. United States, 127 S. Ct. at 2463; Gall v. United States, 128 S.Ct. 586, 591 (2007); Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure

-10-

factors in the Booker calculus, even if the court does not grant a downward departure.

**ANALYSIS**

The Court previously decided in United States v. Lopez-Lopez that a conviction for aggravated assault under Arizona Statute § 13-1204 is a crime of violence and should be considered as such under U.S.S.G. § 2L1.2. The Court, therefore, overrules Apodaca-Leyva's objection to the PSR's assessment of a 16-level enhancement. Furthermore, the Court was before Booker -- and remains after Booker -- authorized to consider the relevancy of the factors that Apodaca-Leyva raises as grounds for departure. The Court believes, however, that Apodaca-Leyva's criminal-history score is not over-representative of his past and future criminal activity, and thus he is not entitled to a downward departure. The Court also believes that it is appropriate to grant Apodaca-Leyva a variance from the Guideline sentence to avoid disparity between Apodaca-Leyva's sentence and those of other defendants with similar criminal backgrounds who have committed similar crimes. Thus, the Court will overrule Apodaca-Leyva's objection, will not grant him a departure, but will grant him a variance.

**I.   THE COURT WILL OVERRULE APODACA-LEYVA'S OBJECTION TO THE PROBATION OFFICER'S FINDING THAT HIS EIGHTEEN-YEAR OLD AGGRAVATED ASSAULT CONVICTION MERITS A 16-LEVEL ENHANCEMENT.**

It is clear that Apodaca-Leyva's primary problem is the 16-level increase. The Court has already addressed this issue, under the same Arizona Statute, in United States v. Lopez-Lopez and found that a 16-level enhancement was appropriate. Thus, because Apodaca-Leyva does not raise any new arguments that the Court has not already addressed in United States v. Lopez-Lopez, and because the relevant situation has not changed since the Court issued that opinion, the Court will overrule Apodaca-Leyva's objection to the 16-level enhancement assessed to him in the PSR.

### A. THE COURT FINDS, BY A PREPONDERANCE OF THE EVIDENCE, THAT APODACA-LEYVA WAS CHARGED WITH THE CRIME OF AGGRAVATED ASSAULT.

At the sentencing hearing, Apodaca-Leyva informed the Court that he was not objecting to the PSR's inclusion of his DWI conviction or his criminal damage conviction. See Tr. at 9:12-10:2 (Court & Whitley). Apodaca-Leyva states that he does not object to the two convictions for which he was assessed criminal offense points and admits that he pled guilty to both of those charges. See id. at 10:5-9 (Court & Whitley). The PSR indicates that Apodaca-Leyva pled guilty to two counts of Aggravated Assault. See PSR ¶ 20, at 6. Counts I and II of the Indictment for these offenses charged that Apodaca-Leyva intentionally, knowingly, or recklessly caused a serious physical injury to two victims. See id. at 7. The Court finds, therefore, by a preponderance of the evidence, and Apodaca-Leyva does not dispute, that Apodaca-Leyva was charged with the crime of aggravated assault.

### B. THE COURT CORRECTLY DECIDED THAT THE 16-LEVEL ENHANCEMENT WAS APPROPRIATE IN UNITED STATES V. LOPEZ-LOPEZ AND WILL ACCORDINGLY OVERRULE APODACA-LEYVA'S OBJECTION.

Rather than belaboring the same points that Mr. William Parnall and Assistant United States Attorney Norman Cairns argued before the Court in United States v. Lopez-Lopez, Apodaca-Leyva merely asserts that his case is "right on point with Lopez-Lopez in almost all respects." Sentencing Memorandum at 9. As in United States v. Lopez-Lopez, Apodaca-Leyva's case deals with the same statute that Lopez-Lopez' counsel argued did not constitute a crime of violence as in the traditional or "common characteristics of an Aggravated Assault charge (i.e. an intentional act that causes the use of force against another)." Sentencing Memorandum at 9 (citing Leocal v. Ashcroft, 543 U.S. 1, 9-10 (2004)(determining that a Florida DWI conviction does not contain the element of intent that

Congress contemplated in creating the 16-level enhancement for a crime of violence)).  Apodaca-Leyva and his counsel are raising this matter because they are of the belief that Leocal v. Ashcroft is the correct interpretation of the law concerning what is in effect a DWI with injuries. See Sentencing Memorandum at 9.

Apodaca-Leyva also contends that the facts of his prior felony case, as presented in the PSR, make it clear that the basis for his prior conviction was his driving while under the influence of alcohol and that the injuries that resulted did not arise from an intentional act or from recklessness. See Sentencing Memorandum at 9.  Apodaca-Leyva maintains that the statute to which he pled guilty was considered an aggravated assault because he was in an accident that "caused serious physical injury."  Id. at 8.

At the sentencing hearing, Apodaca-Leyva's counsel conceded that the situation regarding the Arizona Statute had not changed since the Court decided United States v. Lopez-Lopez, and that he does not raise any arguments regarding the 16-level enhancement that the Court's opinion in United States v, Lopez-Lopez had not already addressed. See Tr. 6:3-6 (Whitley), id. at 6:13-15 (Court & Whitley).  At the hearing the United States stated that it agreed with the Court's analysis in United States v. Lopez-Lopez.  See Tr. 8:19-23 (Court & Martinez).  The USPO stated that it agreed with the Court's decision in United States v. Lopez-Lopez and that it was not aware of any relevant new law since the Court's decision in that case.  See Tr. 8:11-13 (Luna).

The Court believes, therefore, that its decision in United States v. Lopez-Lopez still stands and accordingly will overrule Apodaca-Leyva's objection to the 16-level enhancement.  Because Apodaca-Leyva was convicted of aggravated assault, one of the enumerated offenses in Note 1 of U.S.S.G. 2L1.2, making his offense a crime of violence, the Court believes that a 16-level enhancement is appropriate.  The Court will, however, take Apodaca-Leyva's arguments on this

point into consideration when deciding whether a variance is appropriate.

## II. THE CRIMINAL HISTORY CATEGORY OF III, WITH 6 CRIMINAL HISTORY POINTS, DOES NOT SUBSTANTIALLY OVER-REPRESENT THE SERIOUSNESS OF APODACA-LEYVA'S CRIMINAL HISTORY.

Apodaca-Leyva argues that, if the Court does not grant him a "deviation" or variance based on Booker factors, the Criminal History Category of III substantially over-represents his criminal history and unreasonably raises the advisory guideline sentence. See Sentencing Memorandum at 7. Apodaca-Leyva points out that he has one felony conviction, that is approximately eighteen-years old, for aggravated assault and one misdemeanor conviction for criminal damage to property, which puts him in criminal history category III. See id. Apodaca-Leyva argues that a criminal-history category of II would be more appropriate considering his single felony conviction. See id. At the sentencing hearing, Apodaca-Leyva's counsel stated, in response to the Court's question about his motion for a downward departure in his criminal history, that "Mr. Apodaca-Leyva is not out of the heartland [of cases] so I think our primary argument is . . . under . . . Booker." Tr. at 10:20-25 (Whitley). The United States stated that a criminal history category of III was appropriate for Apodaca-Leyva. See Tr. 11:18-20 (Martinez); Sentencing Memorandum at 4.

The Court will treat Apodaca-Leyva's request as one for a downward departure under U.S.S.G. § 4A1.3. U.S.S.G. § 4A1.3 states: "Standard for Downward Departure. -- If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3. Accordingly, the Court will deny Apodaca-Leyva's request for a downward departure on the basis of his criminal history points. The Court believes that the age of his prior felony conviction is more appropriately addressed through a Booker argument rather than a request for a downward departure. The Court also notes

that the two crimes that comprise Apodaca-Leyva's criminal history score are serious criminal encounters. Given these two convictions, a DWI charge in 2004 and a charge of assault with a deadly weapon in 2007, the Court cannot say that a criminal history score of III over-represents Apodaca-Leyva's past or possible future criminal conduct. Thus, the Court finds that Apodaca-Leyva is within the heartland that the sentencing guideline commission uses and that his criminal history category of III is not so extraordinarily different from others with a criminal history score of III that the Court should depart downward to a criminal history score of II. Thus, the Court will not depart in Apodaca-Leyva's case.

### III.  THE COURT WILL GRANT A VARIANCE FROM THE GUIDELINE SENTENCE.

Apodaca-Leyva's counsel asks the Court to consider a substantial reduction in his client's sentence based on his objection to the categorization of his particular crime as a crime of violence and, further, based on the factors that the court must consider under § 3553(a) and United States v. Booker. Specifically, Apodaca-Leyva asks the Court for a variance down to an offense level of 10. See Tr. at 13:2-17 (Court & Whitley). Apodaca-Leyva believes that a variance to an offense level of 10 is appropriate, because such a sentence would avoid creating a disparity between him and other defendants who are charged with aggravated DWI with injuries. See id. at 13:12-17 (Whitley). Apodaca-Leyva suggests that the Court arrive at this offense level by treating Apodaca-Leyva like he has a base offense level of 8 enhanced by 4 for the DWI conviction. See Tr. at 13:18-24 (Court & Whitley).

Apodaca-Leyva contends that the defendant in United States v. Lopez-Lopez is an almost identically situated defendant and that the Court should allow Apodaca-Leyva a similar variance. See Sentencing Memorandum at 10. Apodaca-Leyva states that, if the Court grants the variance that he requests, the sentence would put him very close to the sentence that the Court gave in United

States v. Lopez-Lopez and that he would be more similarly situated to other defendants with a similar criminal history.  See id.  In light of the views that the Court expressed in United States v. Lopez-Lopez, Apodaca-Leyva implores the Court to make the same analysis in his case.  See id. at 9.

In its response to Apodaca-Leyva's Sentencing Memorandum, the United States agreed that a variance is warranted in Apodaca-Leyva's case.  See United States' Response at 4.  The United States argues that such a variance is warranted because the imposition of a sentence within the advisory Guideline range of 46 to 57 months would result in unwarranted sentencing disparities. See id.  The United States notes that Apodaca-Leyva's felony conviction is nearly eighteen years old and that, when a defendant is convicted of illegal re-entry and the most serious prior offense he has committed is driving while intoxicated, the base offense level of 8 is enhanced by 4 levels.  See id. (citing U.S.S.G. § 2L1.2(b)(1)(D)).  The United States argues that Apodaca-Leyva's most serious prior offense is, essentially, driving while intoxicated but that Arizona has chosen to label his offense as "Aggravated Assault."  United States' Response at 4; Ariz. Rev. Stat. § 13-1204.  The United States acknowledges that, if Arizona had labeled this crime Driving While Intoxicated, Apodaca-Leyva's adjusted offense level would have been 10 and his advisory Guideline sentence would have been 10 to 16 months.  See United States' Response at 6.  The United States contends that, like the Court in United States v. Lopez-Lopez, it is concerned about inconsistent sentences among similarly situated defendants. See United States Response at 6.

Because the Court believes that the factors of 18 U.S.C. 3553(a) counsel in favor of a variance, the Court will grant a substantial variance in Apodaca-Leyva's case.  The Court will sentence Apodaca-Leyva to 10 months imprisonment.

The Court has considered the Guidelines as well as other sentencing goals. Specifically, the

-16-

Court has considered the Guideline sentencing range established for the applicable category of defendant. The Court notes that the issue presented by Apodaca-Leyva regarding Arizona Statute § 12-1304 has come before the Court a number of times. The Court also acknowledges that, when a defendant is convicted of illegal re-entry and the most serious prior offense he has committed is Driving While Intoxicated, the base offense level is increased by 4 levels, and after taking into account the acceptance of responsibility, the adjusted offense level is 10. In Apodaca-Leyva's situation, although his most serious prior offense is Driving While Intoxicated, the way the offense is labeled by the Arizona Legislature makes his offense an Aggravated Assault. The labeling of the offense causes Apodaca-Leyva to be assessed a 16-level enhancement. The Court has analyzed this issue several times and believes that it is correct to categorize the Arizona conviction as a crime of violence, but to vary in order to be more consistent with other DWI sentencings throughout the country. Taking this difference of names into consideration, the Court believes that the punishment set forth in the Guidelines is not appropriate for this offense.

The Court has considered the kinds of sentences and ranges established by the Guidelines, and believes that granting a variance, so as to treat the enhancement for Apodaca-Leyva's prior conviction like a 4-level increase, is consistent with what the Court has done in the past. A sentence at the low end of the Guideline range of 10 months reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and otherwise fully reflects the factors in 18 U.S.C. § 3553(a). A sentence of 10 months is reasonable and is one that does not create sentencing disparities between similarly situated defendants. The sentence is sufficient without being greater than is necessary to comply with the purposes of the punishment set forth in the Sentencing Reform Act. The age of the prior felony conviction, approximately eighteen-years old, provides an additional basis for a variance in this case. Some

enhancement is appropriate for Apodaca-Leyva's criminal history, but a 16-level enhancement is too great, and a sentence of 10 months best reflects his criminal past without unduly emphasizing his past felony conviction as a crime of violence.

**IT IS ORDERED** that the Defendant's objection to the PSR's assessment of a 16-level enhancement pursuant to U.S.S.G. § 2L1.2 is overruled. The Defendant's request for a downward departure in his criminal history score is denied. The Court will grant the Defendant's request for a variance and sentence him to 10 months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kimberly A. Brawley
Assistant United States Attorney
United States Attorney's Office for the
District of New Mexico
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

L. Val Whitley
Santa Fe, New Mexico

    *Attorney for the Defendant*